IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JESUS HERNANDEZ,<br><br>    Petitioner,<br><br>  v.<br><br>JEANNE S. WOODFORD, Secretary,<br>California Department of Corrections<br>and Rehabilitation,<br><br>    Respondent.                    / | No. C 06-3975 WHA (PR)<br><br>**DENIAL OF PETITION FOR WRIT<br>OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. An order to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below the petition is **DENIED**.

## STATEMENT

A jury found petitioner guilty of possession of a firearm by a felon and possession of ammunition by a felon, *see* Cal. Penal Code §§ 12021(a)(1), 12316(b), but was unable to reach a verdict as to five counts of lewd acts on a child, *see id.* § 288 (a). The sentencing court found to be true the prosecution's allegations that petitioner had seven prior serious felony convictions. He was sentenced to prison for two concurrent terms of twenty-five years to life.

The conviction was reversed by the California Court of Appeal and remanded with instructions for the trial court to conduct a hearing on a *Miranda*[1] suppression motion; the court

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

also held that the sentence for possession of ammunition by a felon should have been stayed rather than run concurrently with the sentence for possession of a firearm (Exh. 4 at 5, 7). After holding the hearing, the trial court denied the *Miranda* motion and corrected the sentence as instructed by the court of appeal (Exh. 7 at 1-2). On appeal from the judgment on remand, appellate counsel for petitioner filed a "no merit" brief (*id.* at 2). The court of appeal examined the record and, finding no arguable issue, affirmed (*ibid.*).

The following facts are taken from the opinion of the court of appeal on the first appeal:

> Zoila M. testified she had four children from a prior marriage living in El Salvador when she met appellant in 1996. Appellant had spent time in prison with her brother Javier. After a few years, appellant made arrangements for the children to come to the United States. Two of Zoila's sons told her appellant had sexually molested them when he visited in El Salvador. In California, Zoila saw appellant touch the boys on their crotches and bottoms, sometimes squeezing their buttocks and penises. Appellant asked Zoila if he could sleep with the boys. The boys testified appellant molested them while he showered and slept with them both here and in El Salvador. Pursuant to Evidence Code section 1108, four of appellant's prior convictions for sexually molesting young boys were introduced.
>
> Zoila testified that on October 31, 2001, appellant and Zoila argued and appellant began throwing things. When he went to the bathroom, Zoila led the children out of the apartment and called the police on a cell phone.
>
> When the police responded to this domestic violence call, Officer Marshall Norton found Zoila and the children outside looking scared and confused. Officer Norton talked to Zoila while his partner, Officer Manipol, spoke with appellant, who had come outside. Zoila told Officer Norton appellant had molested the boys. She told him there was a shotgun inside the apartment. Officer Norton approached appellant and asked him if this were true. Appellant confirmed there was a gun in the bathroom closet. A search of the apartment turned up the shotgun and some ammunition.
>
> Officer Norton radioed the serial number of the gun to his dispatcher and was told it had been reported stolen. Appellant said he found the gun at a construction site.
>
> Appellant testified he did not know the shotgun and ammunition were in the apartment. He said Zoila's brother Javier told him he had stolen some guns from a construction site and had hidden them somewhere. Javier occasionally stayed in the apartment. Appellant also denied the molesting the boys.

(Exh. 4 at 2-3.)

///

///

///

2

**DISCUSSION**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

3

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

**1.   Procedural Default**

Respondent contends that these claims "may" be procedurally defaulted because petitioner's state habeas petition raising them was denied with a citation to *In re Clark*, 5 Cal. 4th 750 (1993), in which the court discussed the California rules for timeliness of state habeas petitions – essentially, that they may be barred by "substantial delay." *Id.* at 764-67.

As respondent points out, the *Clark* rule was discussed in *King v. Lamarque*, 464 F.3d 963 (9th Cir. 2006).  In *King* the court noted that in an earlier case it had held that the California timeliness rule pre-*Clark* was not consistently applied, and so could not be a procedural bar. *Id.* at 966-67 (citing *Morales v. California*, 85 F.3d 1387, 1391 (9th Cir. 1996)).  The *King* court therefore held that to oppose the State's invocation of the timeliness bar a petitioner need only say that it is not adequate, rather than supplying citations or other evidence of inconsistency, as is the case for other procedural bars under *Bennett v. Mueller*, 332 F.3d 573, 586 (9th Cir. 2003).  The court in *King* reversed and remanded for a hearing in district court on whether the timeliness bar is now consistently applied. *Id*. at 967-68.

Respondent raised this issue because of the possibility that the Ninth Circuit might consider it in an appeal after remand, thereby resolving the question whether the bar is now consistently applied (Resp't P & A at 7).  That has not happened, however; the case is still in

4

the district court awaiting resolution. The procedure to be used here, therefore, is that set out in *King*, namely that a petitioner may put the consistency of application of the rule in issue simply by contending that it is not adequate to bar his or her claims, and the respondent must then provide evidence to demonstrate that the rule now is consistently applied. Respondent has contended that the claims are procedurally defaulted, petitioner has contended that they are not, and respondent has not replied showing that the rule is now consistently applied. As a result there is no procedural default here.

### 2. Ineffective Assistance of Counsel

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must show: first, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Ibid.* Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689.

#### a. Failure to Obtain Tapes

Petitioner asserts that his counsel was ineffective in not taking steps to obtain audiotapes of the 911 call and the police dispatch tapes. He contends that having the tapes would have led the court to grant the *Miranda* motion to suppress.

At trial petitioner's counsel moved to suppress the shotgun found in petitioner's apartment, claiming a *Miranda* violation (Exh. 4 at 3-4). The trial court denied the motion without holding a hearing, saying that it was untimely (*id.* at 3). The court of appeal reversed on this point and remanded for a hearing on the motion (*id.* at 4). At the time of the hearing on the motion the tapes were no longer in existence, and the trial court held that they probably were not in existence at the time of trial (Exh. 5 (*Miranda* hearing transcript) at 167-68).

Because they were not available for use at the post-appeal *Miranda* hearing, the court's denial of the motion after that hearing does not establish whether petitioner might have been prejudiced by counsel's failure to obtain the tapes.

It will be assumed for purposes of this ruling that counsel's failure to try harder to obtain the tapes was deficient representation, because it is clear that any such hypothetical incompetence was not prejudicial. *See Strickland*, 466 U.S. at 697 (court need not determine whether counsel's performance was deficient before examining prejudice); *Williams v. Calderon*, 52 F.3d 1465, 1470 & n.3 (9th Cir. 1995) (applauding district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice).

Petitioner does not explain what he expected the tapes to show, except that they would have been "exculpatory" (Pet. at 15). He says that the testimony of a witness, officer Norton, shows that the tapes would have had exculpatory value, but he provides no more than that conclusory reference – he does not point to or quote any particular part of the testimony, or in any other way say what it is about the witness's testimony that shows the tapes would be exculpatory, and review of the testimony turns up no obvious basis for the assertion.

It is possible that petitioner believes the tapes would have shown he was in custody at the time he made a statement indicating awareness of the gun in the apartment, although he does not specifically say so as to the ineffective assistance claim. He says, in claiming that a sanction should have been imposed for the prosecution's supposed destruction of the tapes, that a possible sanction would have been "an evidentiary presumption that the tape would have supported [petitioner's] position that he was in custody at the time of challenged statement . . . ." (*id.* at 11). This is completely insufficient to allege, much less establish, that there were statements on the tapes that would have allowed a successful *Miranda* motion. This conclusion is bolstered by the fact that the standard for determining whether an interrogation was "custodial" and thus required the warnings is an objective one, whether "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). That is, the standard is an objective one from the standpoint

6

of a reasonable person in the shoes of the person being interrogated, and does not turn at all on the interrogator's subjective belief. This makes it unlikely, though not impossible, that the radio traffic would have helped the *MIranda* motion succeed.

Petitioner thus has failed to carry his burden to show a reasonable probability that the result of the trial would have been different without the alleged ineffective assistance. There was no Sixth Amendment violation as to counsel's failure to obtain the tapes.

### b.      Investigation

Petitioner also asserts that counsel was ineffective in failing to interview two potential witness, Officer Manipol, who was the first police officer to respond to the scene, and a man named Hugo Arrequin. Once again he has failed to point to any evidentiary support for these propositions (Pet. at 9-10). The only evidence in the record as to what either of these witnesses might have known is the testimony of Officer Manipol at the *Miranda* hearing (Exh. 5 at 72-99), which not surprisingly is not such as to make it reasonably probable that the outcome would have been different if counsel had interviewed Manipol and obtained his evidence pretrial, i.e., there was no prejudice. This claim is without merit.

### c.      Prior Offenses

Petitioner contends that his counsel was ineffective because he allegedly told petitioner that he had filed a motion to strike one or more of petitioner's prior "strike" convictions, as permitted by *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996), but had not (Pet. at 8). As petitioner has phrased it, this claim is frivolous. There is no constitutional right not to have counsel lie to his or her client, and petitioner has not alleged how the fact that counsel supposedly lied could have affected his case.

Alternatively, construing the claim as being that counsel was ineffective in not filing the motion himself prior to sentencing, rather than leaving petitioner to do it, petitioner has failed to show prejudice. Petitioner himself filed a *Romero* motion, and counsel joined in it at sentencing (Exh. 4 at 9 n.7), and counsel renewed the motion himself at the close of the *Miranda* hearing on remand (Exh. 5 at 168). All were denied. In addition, petitioner is a "registered sex offender with seven felony strike convictions for lewd acts on a child, sodomy

1  and oral copulation and four misdemeanor convictions (Exh. 4 at 8-9)." There was not a
2  reasonable probability that the sentencing court would have stricken one or more of the priors if
3  counsel, rather than petitioner, had made the written presentece *Romero* motion. This claim is
4  without merit.

### 2. Translator

Petitioner contends that his due process rights were violated by the trial court's failure to appoint a translator for him. Defendants have a due process right to an interpreter if they are unable to communicate in English. *United States v. Mayans*, 17 F.3d 1174, 1179-81 (9th Cir.1994) (holding that a defendant's Fifth Amendment rights were violated when an interpreter was withdrawn by the court).

Petitioner says in the petition that he moved for appointment of an interpreter and that the motion was denied, but he does not provide any citation to the record for that supposed motion, nor does he provide any description (such as "moved on the first day of trial") that would help in locating the motion in the record (Pet. at 10). Respondent contends that there was no such motion (Resp't P & A at 20), and the Court has found none. In any event, as respondent points out, petitioner's testimony, in English, takes up 130 pages of transcript and does not reveal any serious difficulty in understanding or speaking English (Exh. 2, vol. 2-3 at 396-532). This claim is without merit.

### 3. Prosecutor's Duty to Preserve and Disclose Exculpatory Evidence

Petitioner contends that the prosecutor violated his due process rights by failing to preserve and turn over exculpatory evidence, namely the tapes discussed in section one above.

As to preservation, the government has a duty to preserve material evidence, i.e., evidence whose exculpatory value was apparent before it was destroyed and that is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). As to disclosure, the government must turn over to the defense "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is material "if there is a

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

As discussed in section one, there is no evidence that the tapes would have been exculpatory. This claim therefore fails.

## CONCLUSION

Because petitioner's constitutional rights were not violated in any of the ways he claims, the state courts' rejections of his claims were not contrary to, or an unreasonable application of, clearly-established United States Supreme Court authority. The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April   21   , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\HERNANDEZ975.RUL.wpd

9